Filed 5/27/26  In re Julius A. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re JULIUS A., a Person Coming Under the Juvenile Court Law. |  |
|  | E087585 |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | (Super.Ct.No. DPIN2400047) |
| Plaintiff and Respondent, | OPINION |
| v. |  |
| A.R., |  |
| Defendant and Appellant. |  |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Judge.

Conditionally reversed with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and

Appellant.

Minh C. Tran, County Counsel, Jamila T. Purnell, Chief Assistant County

Counsel, and Prabath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

A.R. (Mother) appeals from the juvenile court's order terminating parental rights to her minor son, Julius A. Mother argues that the court and the Riverside County Department of Public Social Services (the Department) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law. We agree and conditionally reverse.

BACKGROUND

Mother has three sons with different fathers: Arturo C. (born in 2014), A.F. (born in 2017), and Julius (born in November 2022). This appeal involves only Mother and Julius.

The family came to the attention of the Department in December 2023, when the Department received two referrals alleging general neglect and physical and emotional abuse of the children by Mother and their respective fathers. Mother was reported to be homeless and living in a motel with the children. Mother reported that she and the children were living in a motel because the maternal grandparents kicked the family out of their home.

The second referral alleged that Julius's father, N.A. (Father), punched Mother in the mouth and broke her jaw with Julius present. Law enforcement responded to the incident, and Mother was taken to the hospital by paramedics. Mother wanted Father prosecuted and said that she would live with the maternal grandfather.

On the day that the second referral was made, a social worker visited the motel, the hospital, and the maternal grandmother's address but was unable to locate Mother. The social worker reported that "[a]n older man who identified himself as the maternal

2

great uncle reported that the mother did not live in the home, and she only received mail." One week later, Mother spoke with the social worker but refused to allow the social worker to see her or Julius. Arturo and A.F. were living with their fathers. The social worker spoke with Arturo, who said that he did not know where Mother was, but he disclosed that she "frequents the maternal grandmother's home." Arturo's paternal grandmother later told a social worker that Arturo last visited Mother at the maternal grandparents' house on Christmas Day in 2023.

In mid-February 2024, a social worker again visited the maternal grandmother's house. The social worker reported that "[a]n older gentleman who identified himself as the maternal uncle reported that the mother did not live in the home and she only receives mail there." Mother later spoke with the social worker on the telephone and described her living situation as "legally homeless," but she "verified sleeping at the maternal grandmother's home nightly." A social worker made unannounced visits to the maternal grandparents' house on February 29 and March 2, 2024. During the second visit, "the maternal uncle and maternal great grandmother indicated [Mother] and Julius did not reside at that residence and were homeless." The maternal great-grandmother said that Mother "comes and goes" at the maternal grandparents' house.

In February 2024, the social worker questioned Mother about whether she had any Indian ancestry, and Mother denied that she did.[1] Mother denied that she had ever lived

---

[1]     Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

or attended school on a reservation or received any benefits from an Indian tribe. In mid-February 2024, the social worker spoke with a liaison from the Torres Martinez Desert Cahuilla Indians, who confirmed that Mother was not a registered member of that federally recognized tribe.[2] (87 Fed.Reg. 4636-02 (Jan. 28, 2022).) The social worker reported that "[n]o information was found regarding the mother or children identifying tribal family member information."

The Department filed a petition under Welfare and Institutions Code section 300 as to Julius. (Unlabeled statutory references are to the Welfare and Institutions Code.) The petition contained allegations against Father under subdivision (a) of section 300 and against both parents under subdivisions (b)(1) and (g).

Mother appeared at the initial hearing with Julius. Mother's counsel represented that Mother had been staying with the maternal grandfather. Father was not present, because he was in jail. Several of Julius's paternal relatives, including Father's sister Ariana A., attended the hearing. The court continued the hearing for one day to allow Father to attend but questioned the paternal relatives who were present about Indian ancestry. All paternal relatives denied any Indian ancestry. Mother filed a Judicial Council form ICWA-020 (ICWA-020) stating that she did not have any Indian ancestry.

Father was present in custody at the continued detention hearing the following day. Father's counsel stated that Father had no Indian ancestry and would later file an

---

[2] The record does not contain any information explaining why the social worker contacted the tribe. There is no indication in the record that anyone identified Mother or any relative as being a member of the Torres Martinez Desert Cahuilla Indians.

ICWA-020.  That day, Father's counsel filed the ICWA form on Father's behalf, stating that Father had no Indian ancestry.

The court detained Julius from both parents and detained Arturo and A.F. from Mother.  Julius was placed with his paternal aunt, Ariana, and Arturo and A.F. were placed with their respective fathers.  The court found that there was no reason to believe that Julius was an Indian child.

In June 2024, the Department filed an amended petition containing new allegations involving A.F. under subdivisions (a) and (b)(1) of section 300 against Mother and A.F.'s father.  At the detention hearing on the amended petition, the court detained A.F. from his father.  Mother and her sister, Miranda R. appeared at that hearing.  Miranda told the court that she was unaware of any Indian ancestry within the family.

After several continuances, the court held a contested jurisdiction and disposition hearing in September 2024.  Mother reported that she continued to live at the maternal grandfather's house.  The court found true the allegations as to Julius against both parents.  The court removed Julius from both parents' custody, ordered reunification services for Mother, and bypassed reunification services for Father under subdivision (e)(1) of section 361.5.  The court found that ICWA did not apply.

In the period between the detention hearing and the jurisdiction and disposition hearing, both parents told a social worker that they did not have any Indian ancestry.  Mother repeatedly reiterated that denial after the jurisdiction and disposition hearing.

The court terminated Mother's reunification services at a combined six- and 12-month status review hearing in May 2025, and it set the matter for a section 366.26 hearing as to Julius. In subsequent reports, the Department did not identify any new relatives questioned about Indian ancestry.

The court held the section 366.26 hearing in December 2025. The court found Julius likely to be adopted and terminated both parents' parental rights. Although the court did not make an express ICWA finding at the section 366.26 hearing, the order terminating parental rights "was necessarily premised on a *current* finding by the juvenile court" that ICWA did not apply to Julius. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10.)

## DISCUSSION

Mother argues that the juvenile court prejudicially erred by failing to ensure that the Department conducted an adequate ICWA inquiry. We agree. The Department failed to discharge its duty of initial inquiry with respect to certain maternal extended family members.

To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe, or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subds. (a)(4), (b)(1); *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.) The child welfare agency and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th

6

671, 678 (*Ricky R.*), disapproved on another ground by *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18.)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R., supra*, 82 Cal.App.5th at p. 678.) The child welfare agency's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The agency must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the agency must also ask the child and the child's family members, including extended family members, upon first contact with those individuals. (*Ibid.*) In addition, if the child is taken into the agency's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the agency must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (§ 224.1, subd. (c)(1).)

Juvenile courts must conduct their own initial inquiry as well. "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*Ricky R., supra*, 82 Cal.App.5th at pp. 678-679, quoting 25 C.F.R. § 23.107(a) (2022).) Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or

7

"other interested person[]," if the party or other interested person was not present at the first hearing). (§ 224.2, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. [Citation.] '[R]eason to believe' exists whenever the court or [the child welfare agency] has 'information suggesting that either the parent of the child or the child is a member [or citizen], or may be eligible for membership [or citizenship], in an Indian tribe.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting § 224.2, subd. (e), 1st par. & (e)(1).)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) The "court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) "'"On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes."'" [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry

8

is inadequate, conditional reversal [of an order terminating parental rights] is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Ibid.*)

The Department failed to inquire of maternal extended family members who were reasonably available in this case. The Department had contact information for the maternal grandparents but never asked them about Indian ancestry. Social workers visited their home multiple times before the initial petition was filed, but there is no evidence that the Department attempted to communicate with either of them during those visits. There is also no evidence that the Department attempted to contact them after the proceeding was initiated.

Mother contends that the Department also erred by failing to ask the maternal great-uncle about possible Indian ancestry, but we find no error with respect to him. He does not qualify as an extended family member under the statutory definition.[3] (§ 224.1, subd. (c)(1); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053.)

The court and the Department asked only Mother and the maternal aunt about Mother's ancestry. Given that (1) inquiry was made of only those two individuals, (2) the maternal grandparents were likely to be good sources of information on the issue, and

---

[3] On appeal, the parties appear to agree that the person who spoke to the social worker at the maternal grandparents' house is the maternal great-uncle, but there is some confusion in the record on that point. The Department referred to an older man at the maternal grandparents' house as both the maternal great-uncle and the maternal uncle. If the Department determines that the person is Julius's uncle and not his great-uncle, then the maternal uncle does qualify as an extended family member and the Department should ask him about possible Indian ancestry.

(3) the maternal grandparents were readily available, the juvenile court abused its discretion by finding that the ICWA inquiry was adequate, proper, and duly diligent. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)  We therefore conditionally reverse the order terminating parental rights and remand for the Department to conduct a proper inquiry. (*Ibid.*)

## DISPOSITION

The order terminating parental rights is conditionally reversed.  On remand, the juvenile court shall order the Department to comply with its duty of initial inquiry under subdivision (b) of section 224.2 and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the proper tribes (25 U.S.C. § 1912(a); § 224.3).  The court shall also order the Department to comply with the documentation requirements of rule 5.481(a)(5) of the California Rules of Court.  If the court subsequently determines that the Department has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights.  If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

CODRINGTON
Acting P. J.

LEE
J.

10